In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2182

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GREGG S. STEIN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11-CR-184—**William C. Griesbach**, *Chief Judge*.

ARGUED DECEMBER 12, 2012—DECIDED MARCH 19, 2013

Before POSNER, ROVNER and WOOD, *Circuit Judges*.

PER CURIAM. Gregg Stein appeals his conviction for possessing a firearm following a misdemeanor conviction for a crime of domestic violence. *See* 18 U.S.C. § 922(g)(9). He argues that he should have been allowed to introduce evidence at trial supporting a proposed defense that his lawyer in the domestic-violence prosecution had led him to believe that the misdemeanor conviction would not disqualify him from possessing

firearms. Because the district court correctly relied on two decisions from this court in rejecting such evidence as irrelevant, we affirm the judgment.

Stein pleaded guilty to misdemeanor battery in Wisconsin, *see* WIS. STAT. § 940.19(1), after he struck his live-in girlfriend in 2008, breaking two of her teeth and bruising her face. As part of Stein's plea bargain, the state prosecutor dismissed a domestic-abuse surcharge that normally would apply. *See* WIS. STAT. § 973.055. Stein's attorney stated at the plea hearing that he believed the guilty plea without the surcharge would protect Stein from the federal ban on gun possession for persons convicted of a misdemeanor domestic-violence crime. *See* 18 U.S.C. § 922(g)(9). Stein, an avid hunter, wanted to preserve the ability to possess and use guns. His attorney advised in open court that "he may have some difficulty purchasing a weapon" after his battery conviction, but that he would not violate federal law by possessing and using the guns that he already owned. That advice prompted the state judge to warn Stein, however, that "there's no guarantees" he could possess guns after his conviction.

Stein was sentenced to two years' probation, and one condition of his sentence was that he not possess guns while on supervision. At a hearing in 2009 on his request for early termination of his probation, Stein received new information making it clear that his attorney had given him bad advice. Stein had wanted the firearm ban lifted in time for the upcoming hunting season, but the prosecutor asserted that federal law still would prevent

him from possessing guns after his probation ended. The state judge agreed. In an apparent reference to *United States v. Hayes*, 555 U.S. 415 (2009), the judge explained that a decision released after Stein's sentencing clarifies that the predicate state offense need not denominate a domestic relationship as a statutory element in order to meet the requirements of § 922(g)(9). *See Hayes*, 555 U.S. at 425-26.

After his probation ended, Stein alerted federal authorities to his prohibited status when he completed an ATF Form 4473 in anticipation of taking possession of a rifle he won at a sports banquet. One question on the form asks whether the applicant has been convicted of a misdemeanor crime of domestic violence, explaining that such persons are prohibited by federal law from possessing guns. Stein answered yes to this question. He was denied permission to obtain the rifle, and a special agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives visited his house to deliver a letter confirming his prohibited status. Stein admitted to the agent that he possessed other guns, and although he was reluctant to relinquish possession, he agreed to transfer the guns to his mother's house. He later was charged under § 922(g)(9) with unlawful possession of firearms.

In preparing for trial Stein's new attorney sought a ruling that would allow him to introduce evidence and have the jury instructed concerning Stein's purported ignorance of his prohibited status. Stein contended that he could not be found guilty of "knowingly" violating the

federal ban on gun possession, *see* 18 U.S.C. § 924(a)(2), if he was unaware of his prohibited status under § 922(g)(9). He thought he could show that his lawyer in the state case had misadvised him that he would still be able to possess a gun without violating federal law, and thus he did not have the required mens rea for unlawful possession. The district judge ruled, however, that evidence concerning Stein's knowledge of his legal status was irrelevant and also rejected his proposed jury instruction. Stein then proceeded to a bench trial in order to preserve these issues for appeal. He stipulated that his Wisconsin battery offense meets the federal definition of a misdemeanor domestic-violence crime and that the guns he possessed had traveled in interstate commerce before they came into his possession. The district court found Stein guilty and sentenced him to 2 years' probation.

On appeal Stein maintains that he should have been allowed to present evidence concerning his lack of knowledge about his prohibited status. He acknowledges that two opinions from this court, *United States v. Lee Wilson*, 437 F.3d 616, 620 (7th Cir. 2006) (interpreting 18 U.S.C. § 922(g)(1)), and *United States v. Carlton Wilson*, 159 F.3d 280, 288-89 (7th Cir. 1998) (interpreting § 922(g)(8)), suggest that the mens rea element of § 922(g) is satisfied by knowing possession of the gun and does not require proof that the defendant was aware of his status as a prohibited person. Stein nevertheless argues, citing the dissenting opinion in *Carlton Wilson*, that § 922(g)(9) should be construed to require knowledge that one's gun possession violates the law.

*See* 159 F.3d at 293 (Posner, C.J., dissenting) ("It is wrong to convict a person of a crime if he had no reason to believe that the act for which he was convicted *was* a crime, or even that it was wrongful.").

Stein seeks to distinguish both *Wilson* decisions by differentiating persons convicted of a misdemeanor crime of domestic violence, 18 U.S.C. § 922(g)(9), from those who violate other subsections of § 922(g), including felons, *id.* § 922(g)(1), fugitives, *id.* § 922(g)(2), unlawful users of controlled substances, *id.* § 922(g)(3), and persons committed to a mental institution, *id.* § 922(g)(4). He argues that these other classes of prohibited persons know about their status, either because the factual circumstances are obvious or because the judge is required to engage in an extensive colloquy with the defendant. Thus, he continues, persons convicted under other subsections of § 922(g) are less likely to be unaware of the collateral consequences and loss of certain rights. In contrast, Stein asserts, he was affirmatively told during his plea hearing in state court that his conviction would *not* trigger the federal firearm ban. What is telling, however, is that Stein does not distinguish persons convicted of misdemeanor crimes of domestic violence from those subject to a domestic-relations restraining order, *see* 18 U.S.C. § 922(g)(8). The bases for disqualification under subsections (g)(9) and (g)(8) are similar, and yet in *Carlton Wilson* we rejected the same theory that Stein presents here and concluded that for subsection (g)(8) "knowingly" means knowledge of the facts constituting the offense, not knowledge that those facts make gun possession illegal. 159 F.3d at 288-89; *see also United States*

*v. Shelton*, 325 F.3d 553, 563 (5th Cir. 2003) ("We perceive no principled reason for drawing an analytical distinction between § 922(g)(8) and § 922(g)(9).").

The Supreme Court has explained, in interpreting the knowledge element of § 924(a), that "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *See Bryan v. United States*, 524 U.S. 184, 192-93 (1998). We relied on *Bryan* when analyzing § 922(g)(8), *see Carlton Wilson*, 159 F.3d at 288-89, and *Bryan* equally supports the district court's conclusion in this case. Additionally, several other circuits have held that § 922(g)(9) requires only knowledge of facts. *See Shelton*, 325 F.3d at 563; *United States v. Hancock*, 231 F.3d 557, 562-63 (9th Cir. 2000); *United States v. Hutzell*, 217 F.3d 966, 967-68 (8th Cir. 2000); *United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000); *United States v. Beavers*, 206 F.3d 706, 708-10 (6th Cir. 2000).

Ultimately, as a matter of statutory construction, there is no reason to think Congress intended "knowingly" to mean different things for different subsections of § 922(g). *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears. . . . We have even stronger cause to construe a *single* formulation . . . the same way each time it is called into play."); *United States v. Butler*, 637 F.3d 519, 524 (5th Cir. 2011) (concluding that "it would be illogical" to impose a different mens rea requirement on different subsections of § 922(g)). We have held repeatedly that

the word "knowingly" made applicable to § 922(g) by § 924(a)(2) requires knowledge of the factual elements of the offense and nothing more. *See Lee Wilson*, 437 F.3d at 620 (felons); *Carlton Wilson*, 159 F.3d at 289 (persons subject to a protective order); *United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993) (fugitives); *see also United States v. Obiechie*, 38 F.3d 309, 315 (7th Cir. 1994) (holding that "'knowingly' in § 924(a)(1) refers only to the intent to do the act that is proscribed by law, as opposed to the intentional violation of a known legal duty").

Accordingly, we AFFIRM the district court's judgment.